UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
ASHLAND

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff/Respondent, ) | |
| ) | No. 0:15-CR-18-DLB-HAI-1 |
| v. ) | |
| ) | RECOMMENDED DISPOSITION |
| DAVID ROSCOE HALE, ) | |
| ) | |
| Defendant/Movant. ) | |
| ) | |
| ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

The Court considers Defendant David Hale's *pro se* motion to vacate his sentence under 28 U.S.C. § 2255. D.E. 90. Section 2255 provides that a federal prisoner may seek habeas relief because his sentence violates the Constitution or federal law, the federal court lacked jurisdiction to impose such a sentence, or the sentence exceeds the maximum authorized by law. 28 U.S.C. § 2255. To prevail on a § 2255 motion alleging constitutional error, a defendant must establish that the error had a "substantial and injurious effect or influence on the proceedings." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)). A § 2255 movant bears the burden of proving his or her allegations by a preponderance of the evidence. *McQueen v. United States*, 58 F. App'x 73, 76 (6th Cir. 2003) (per curiam).

The Court recognizes that Hale is proceeding *pro se*, without the assistance of an attorney. The Court construes *pro se* motions more leniently than other motions. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Castro v. United States*, 540 U.S. 375, 381-83 (2003).

## I. Background and § 2255 Motion

In March 2016, Defendant David Hale pleaded guilty to one count of conspiracy to distribute oxycodone. *See* D.E. 78 (plea agreement). In his plea agreement, Defendant admitted that he was a leader in the conspiracy. *Id*. at 2, 4. He also admitted that he had a 2011 Kentucky conviction for first-degree drug trafficking and a 2013 Kentucky conviction for two counts of first-degree drug trafficking. *Id*. at 3. He acknowledged that "[b]ecause of the prior felony drug conviction," he faced a statutory maximum punishment of 30 years. *Id*. Hale also admitted in his plea agreement that he qualified as a career offender under USSG § 4B1.1, and was in criminal history category VI. *Id*. at 4.

His plea agreement contains the following waiver provision:

> The Defendant waives the right to appeal the guilty plea and conviction. The Defendant waives the right to appeal any determination made by the Court at sentencing with the sole exception that the Defendant may appeal the length of the sentence if the length of the term of imprisonment exceeds the high end of the advisory sentencing guidelines range as finally determined by the Court at sentencing. Except for claims of ineffective assistance of counsel, the Defendant also waives the right to attack collaterally the guilty plea, conviction, and sentence.

*Id*. at 5.

According to Hale's Presentence Investigation Report ("PSR"), his Guidelines Range was 235 to 293 months. PSR ¶ 61 & Addendum. At sentencing, Hale raised no objection to the addendum that calculated this Range. D.E. 97 at 3.

On March 16, 2016, Hale was sentenced to 252 months of imprisonment. D.E. 83 at 2. Hale did not appeal. On December 12, 2016, he filed this *pro se* motion to vacate his sentence under 28 U.S.C. § 2255. D.E. 90. The government responded, and attached an affidavit by Hale's trial counsel. D.E. 101, 104. Hale replied. D.E. 106.

Hale argues in his § 2255 motion that he "was denied effective assistance of counsel," and should be resentenced "without reference to the career-offender section of the Guidelines." D.E. 90 at 21. He argues that:

- His counsel failed to ensure he could hear court proceedings because he "has a hearing deficiency;"

- His counsel failed to adequately investigate his case;

- His counsel failed to inform him of the elements of the offense;

- His counsel "failed to explain the conspiracy-wide versus defendant-specific strategy to Hale;"

- His counsel misled him regarding the drug quantity that could be attributed to him under the Sentencing Guidelines.

- His counsel failed to explain any potential defenses;

- His counsel failed to bargain for no § 851 enhancement in the plea agreement;

- His counsel failed to explain the nature of a sentencing enhancement for prior felony conduct under § 851; and

- His counsel failed to argue that his "alleged prior drug offenses were not 'controlled substance offenses'" for purposes of the career offender enhancement.

*Id*. at 2, 13, 17, 19.  He further argues that his plea was not knowing and voluntary.  *Id*. at 6-7.

Many of Hale's allegations contradict his prior sworn statements.  He should be aware that "[s]olemn declarations in open court carry a strong presumption of verity," and "[t]he subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal."  *Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *see also Elzy v. United States*, 205 F.3d 882, 886 (6th Cir. 2000) (finding that a conclusory statement is insufficient to

3

raise the issue of ineffective assistance of counsel). Hale has not pointed to any defect in the District Judge's plea colloquy, and when the District Judge "has scrupulously followed the required procedure" during a plea colloquy, "the defendant is bound by his statements in response to that court's inquiry." *Ramos v. Rogers*, 170 F.3d 560, 563 (6th Cir. 1990) (quoting *Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986)).

## II. Hearing Impairment

In his § 2255 motion, Hale argues his trial counsel, William M. Butler, Jr., was ineffective for failing to make any "argument that Hale has a hearing deficiency" and cannot understand conversations unless the speaker is facing him. D.E. 90 at 2. He states that he "cannot say whether this Court went over the elements of the offense because . . . he could not hear the Court." *Id*.

However, at the beginning of the rearraignment, Hale's attorney stated, "Your Honor, Mr. Hale has a really bad hearing problem." D.E. 96 at 3. Judge Bunning responded, "I was told that by the marshal. That's why I was keeping my voice up, sir." *Id*. Although Hale occasionally asked his lawyer to repeat things Judge Bunning said, Hale generally responded appropriately to Judge Bunning's questions. *See id*. at 30 ("I can hear you fine, sir."). Hale reported that he was able to hear the prosecutor's summary of the plea agreement. *Id*. at 36-37.

Hale's former attorney states in his affidavit that he "informed the Court that [Hale] had difficulty hearing." D.E. 101-1 at 2. The attorney also states that he had "thoroughly" discussed "the guidelines and sentences" before the plea, as well as "the facts and elements of the offenses . . . multiple times before he ever appeared in Court." *Id*.

The record therefore refutes Hale's statements that his attorney did not alert the Court to his hearing issues and that he could not hear the Court at his rearraignment. Hale's unsupported

4

statements to the contrary in his § 2255 moation are insufficient to support a claim of ineffective assistance on this issue.

### III.  Validity of the Plea Agreement

As previously noted, Hale waived the right to appeal (except that he could appeal an above-Guidelines sentence) and the right to collaterally attack his sentence and conviction, except for claims of ineffective assistance of counsel.  D.E. 78 ¶ 8.  Hale has complied with this waiver in that he did not appeal and the grounds in his § 2255 motion are limited to claims of ineffective assistance of counsel.  *See* D.E. 90.

Nevertheless, Hale argues in his § 2255 motion that his waiver is unenforceable.  *Id*. at 6-7.  Hale argues that a "substantial violation of due process" occurred at his rearraignment.  Specifically, he argues that he "can never knowingly and intelligently waive the right to appeal or collaterally attack a sentence that has not yet been imposed."  *Id*. at 6.  "[U]ntil the sentence is imposed," Hale argues, "the defendant cannot possibly know what it is he or she is waiving."  *Id*. at 7; *see also* D.E. 106 at 4.  Hale does not explicitly frame this issue as ineffective assistance of counsel, nor does he explain how he would have proceeded differently had the waiver not been in place.  He has complied with the waiver, and makes no statement regarding how he has been prejudiced by doing so.  Thus, his claim that his waiver is invalid is irrelevant.

The claim is also meritless.  Federal Rule of Criminal Procedure 11 governs plea colloquies.  The Rule "is meant to ensure that the district court is satisfied that" a guilty plea is made knowingly, voluntarily, and intelligently.  *United States v. Webb*, 403 F.3d 373, 378 (6th Cir. 2005).  Rule 11 requires the Court to verify "that the defendant understands his or her applicable constitutional rights, the nature of the crime charged, the consequences of the guilty plea, and the factual basis for concluding that the defendant committed the crime charged."  *Id.*

at 378-79. When the District Court "has scrupulously followed the required procedure" during a plea colloquy, "the defendant is bound by his statements in response to that court's inquiry." *Ramos v. Rogers*, 170 F.3d 560, 563 (6th Cir. 1990) (quoting *Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986)). Accordingly, in cases where the court has followed Rule 11's procedural requirements, "absent extraordinary circumstances, or some explanation of why defendant did not reveal other terms, at least when specifically asked to do so by the court, *a defendant's plea agreement consists of the terms revealed in open court*." *Id*. The Court at rearraignment reviewed the terms of the waiver provision in paragraph 8 of the plea agreement. D.E. 96 at 36, 51. Hale stated he understood these terms and had discussed them with his attorney. *Id*. at 51-53.

Hale's argument that he could not waive a challenge to an unknown sentence is legally incorrect. At his rearraignment, Hale was made aware of the maximum penalties he faced. D.E. 96 at 34, 38. He stated that he understood these penalties. *Id*. at 38. It is routine for defendants to waive their appellate or collateral attack rights in plea agreements when they know their maximum sentence exposure, but cannot know the actual sentence that will be imposed. *See Davila v. United States*, 258 F.3d 448, 450-51 (6th Cir. 2001). Hale's argument does not invalidate his plea agreement or waiver.

Hale does not allege that anything unusual or untoward happened at his rearraignment, aside from his auditory issues, which have already been addressed. In fact, as Hale acknowledges in his reply brief, "There is no question that the record appears replete with statements supporting that Hale understood the plea." D.E. 106 at 1. Hale avers that every statement he made at rearraignment "was based upon what his lawyer advised him to do." *Id*. But he does not allege that his lawyer advised him to lie, coerced him, or otherwise advised him

6

improperly. In short, Hale has not met his burden of showing that his plea agreement was invalid.[1]

### IV. Ineffective Assistance of Counsel

A claim of ineffective assistance of counsel has two components. "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Under the second component, "the defendant must show that the deficient performance prejudiced the defense." *Id.* at 687.

To prove deficient performance, a defendant must show "that counsel's representation fell below an objective standard of reasonableness" as measured under "prevailing professional norms" and evaluated "considering all the circumstances." *Strickland*, 466 U.S. at 688. However, a reviewing court may not second-guess trial counsel's strategic decisions. *Moss v. Hofbauer*, 286 F.3d 851, 859 (6th Cir. 2002). Thus, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (internal quotations omitted). "A fair assessment of attorney performance requires that every effort be made to

---

[1] The cases Hale cites are not on point. *See* D.E. 106 at 4. Unlike the defendants in those cases, Hale is not arguing for the application of a new Supreme Court ruling. These cases were not about rights merely "unknown [by the defendant] at the time of his sentencing," *id.*, but rights that the law had not yet recognized. The Court in *United States v. McBride*, 826 F.3d 293, 294-95 (6th Cir. 2016), *cert. denied*, 137 S. Ct. 830, 197 L. Ed. 2d 72 (2017), stated that the defendant (on direct appeal) could not have waived a claim based on *Johnson v. United States*, 135 S. Ct. 2551 (2015), because that Supreme Court opinion did not exist at the time of his plea deal. Similarly, the Fifth Circuit in *United States v. Wright*, No. 15-10892, 2017 WL 1032310, at *2 (5th Cir. Mar. 15, 2017), stated that a defendant (on direct appeal) could not have waived a claim based on *Mathis v. United States*, 136 S. Ct. 2243 (2016), for similar reasons. In contrast, Hale does not rely on a newly-recognized right.

eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.*

In order to prove prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. When evaluating prejudice, courts generally must consider the "totality of the evidence." *Id*. at 695. To show prejudice in the guilty plea context, a movant "'must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and instead would have insisted on going to trial.'" *Hodges v. Colson*, 727 F.3d 517, 534 (6th Cir. 2013) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)), *cert. denied sub nom. Hodges v. Carpenter*, 135 S. Ct. 1545 (2015), *reh'g denied*, 135 S. Ct. 2345 (2015).

A defendant has the burden of making both showings. *Strickland*, 466 U.S. at 687. However, "[w]hen deciding ineffective-assistance claims, courts need not address both components of the inquiry 'if the defendant makes an insufficient showing on one.'" *Campbell v. United States*, 364 F.3d 727, 730 (6th Cir. 2004) (quoting *Strickland*, 466 U.S. at 697).

Hale's claims do not support a finding of ineffective assistance.

### A. Failure to Explain the Elements of the Offense

Hale alleges that his attorney was ineffective because Hale "was never informed of the elements of the offenses." D.E. 90 at 2; *see also id*. at 7. Hale cites *Smith* (*id*. at 9-10), which states:

> A criminal defendant has a right to expect at least that his attorney will review the
> charges with him by explaining the elements necessary for the government to

8

>secure a conviction, discuss the evidence as it bears on those elements, and explain the sentencing exposure the defendant will face as a consequence of exercising each of the options available.

*Smith v. United States*, 348 F.3d 545, 553 (6th Cir. 2003).

The record contradicts Hale's assertion that he was not aware of the elements of the offense to which he pleaded guilty. First, Paragraph Two of the Plea agreement contains the elements of the offense, and Hale signed this document. D.E. 78 at 8.

Second, at Hale's rearraignment, the parties discussed how a new version of the plea agreement had been made that altered some details regarding relevant conduct. Hale's attorney told the Court, "When Mr. Hale and I went over the plea agreement, he pointed out the points where he does not believe that the relevant conduct is correct." D.E. 96 at 21. Judge Bunning asked Hale if he had "gone over [the plea agreement] with Mr. Butler prior to today?" Hale replied, "Yes." *Id*. at 25. Mr. Butler then explained that he had only discussed the new version of the agreement with Hale that morning, when they "spent an hour discussing the plea agreement." *Id*. Hale told the Court he would like more time to review the new version. *Id*. at 26. The Court obliged, and moved Hale's plea to "the end of the docket." *Id*.

Two hours later, the hearing resumed. D.E. 96 at 28. Hale told the Court he was given adequate time to discuss the new version of the agreement with his lawyer. *Id*. at 29. Judge Bunning read Count One of the Indictment. Hale responded that he understood the charge. D.E. 96 at 55. Judge Bunning explained the legal definition of conspiracy, and Hale responded that he understood. *Id*. Judge Bunning asked, "Now, the elements of this charge are set forth in paragraph 2 of the plea agreement. Did you review that with Mr. Butler as well?" Hale responded, "Yes." *Id*. at 56.

Third, Mr. Butler states in his affidavit that he "was careful to make sure [Hale] understood the facts and elements of the offenses and reviewed those with him multiple times before he ever appeared in Court." D.E. 101-1 at 2.

The record thus refutes Hale's assertion that he was not informed of the elements of the offense to which he pleaded guilty. In this case, Hale is bound by his sworn admissions to the Court. His unsupported statements in his motion give the Court no basis upon which to find deficient performance or prejudice.

**B. Failure to Explain the Conspiracy-Wide Versus Defendant-Specific Strategy**

Hale argues that, under the facts of this case, "a defense lay that would have required an instruction on a defendant-specific basis." D.E. 90 at 17. He suggests that his attorney was ignorant either of the availability of a defendant-specific jury instruction on drug quantity or of the facts that would support such an instruction. *Id*. Hale argues that if he knew he could obtain that sort of jury instruction, he would not have pleaded guilty because under a defendant-specific instruction, "the jury would have never attributed [the] entire weight of the drugs to Hale." *Id*. at 18. He argues that he could have instead received a sentence of one year. *Id*.

Hale admitted in his plea agreement that he was a leader in the conspiracy, and admitted personal involvement in the distribution of 130.5 oxycodone 30-milligram tablets. D.E. 78 ¶ 3. His PSR calculated a marijuana equivalency of 3,000 to 10,000 kilograms. PSR ¶ 22. The Probation Office adopted this amount on the basis that Hale's girlfriend had accepted as relevant conduct approximately 14,600 pills. [2] *Id*. ¶ 16. Hale admitted at his rearraignment (as in his plea agreement) that his girlfriend, Tonya Biggs, assisted him in the distribution of oxycodone. D.E. 96 at 57. Hale lodged no objections to the PSR.

---

[2] The government noted that the marijuana equivalency reflects an estimated total of between 15,000 and 49,750 pills. D.E. 68 at 1-2. The sentencing transcript reflects that Hale was the "[u]ndisputed leader" of this conspiracy that involved a "minimum of 15,000 pills." D.E. 97 at 10.

10

Hale cannot now simply retract his previous sworn admissions in open Court and in his plea agreement. He cannot show prejudice (a likelihood of a different outcome) when he admitted his leadership role in the conspiracy and failed to object to the drug quantity attributed to the conspiracy. This claim fails.

### C.  Ineffective Assistance Regarding the Guidelines Range

Hale states that he "specifically informed Butler to remove the portion of the plea agreement that would require him to accept the total number of controlled substance[s]." D.E. 90 at 19. Indeed, the handwritten and signed notations on the plea agreement reflect that part of paragraph 3(k), and all of paragraphs 3(l) and 5(c) were removed. D.E. 78 at 3-4. The excised portions had recorded that Defendant had been picking up as many as 500 oxycodone tablets daily and that Hale and the conspiracy were responsible for 3,000 to 10,000 marijuana-equivalency kilograms. *Id*. Hale argues that this change to the plea agreement left him responsible for only "127 pills, or less than half-a-po[u]nd of marijuana."[3] D.E. 90 at 19-20. Hale says his attorney told him that, in light of the changes to the plea agreement, Hale would be "held accountable" only "for the 127-pills that were listed in the controlled buys." *Id*. at 20. He states that even with a criminal history category of VI, he did not expect a sentence "anywhere close to twenty-years." *Id*.

Hale avers he was surprised at sentencing when the government argued he should be held responsible for all the pills. D.E. 90 at 20. As previously noted, the PSR attributed a marijuana equivalency of 3,000 to 10,000 kilograms (PSR ¶ 22), and on this basis calculated a Guidelines Range of 235 to 293 months (*id*. ¶ 61 & Addendum). At sentencing, Hale did not object to the

---

[3] The number of pills described in paragraph 3 of the plea agreement adds to 130.5. D.E. 78 at 2-3. Hale is apparently not counting 3.5 pills he admits were distributed by his housemate Stanley Easterling. *Id*. ¶ 3(e).

11

PSR's Guidelines calculations, and his attorney stated that he discussed them with Hale. D.E. 97 at 2-4.

Regardless of whether Hale was misled regarding his sentencing exposure in relation to the relevant drug quantities, his argument amounts to a dispute over the Guidelines Range. "[A]n error in the application of the Sentencing Guidelines does not warrant collateral relief under § 2255 absent a complete miscarriage of justice." *Jones v. United States*, 178 F.3d 790, 796 (6th Cir. 1999); *accord United States v. Lashinsky*, No. 2:05-CR-79-DLB-EBA, 2015 WL 161279, at *8 (E.D. Ky. Jan. 13, 2015). "[N]onconstitutional errors, such as mistakes in the application of the sentencing guidelines, will rarely, if ever, warrant relief [in postconviction proceedings.]" *Grant v. United States*, 72 F.3d 503, 506 (6th Cir. 1996). Hale's claims do not rise to a complete miscarriage of justice. His disagreement with the application of the Guidelines regarding the attributable drug quantity is therefore not a claim that can warrant habeas relief. As such, it likewise cannot support a claim of ineffective assistance of counsel. "[A]s a practical matter, collateral relief does exist to vindicate rights of constitutional import that may lurk beneath otherwise garden-variety issues of statutory rights or guideline calculations," such as this. *Id*.

### D.  Failure to Explain Potential Defenses

Hale argues that "no potential defenses" were explained to him. D.E. 90 at 2. His counsel states that "there were no viable defenses." D.E. 101-1 at 1.

The only specific potential defense Hale identifies is the defendant-specific jury instruction discussed in the previous section. Construing this aspect of his motion as liberally as possible, Hale may be arguing that his attorney should have informed him that he could argue at trial for a lesser amount of attributable drugs. However, Hale does not explain what drug

quantity should have been attributable to him at trial, or why. This argument is too undeveloped to pack any punch. The Court has no basis upon which to find that there was deficient performance or that Hale was prejudiced by any alleged failure to explain potential defenses.

### E. Ineffectiveness Regarding the § 851 Enhancement

On October 8, 2015, at the time of the indictment, the government filed a notice of two prior convictions pursuant to 21 U.S.C. § 851(a)(1). D.E. 5. The notice alerted Hale that these convictions would "permit increased punishment as set forth in 21 U.S.C. § 841." *Id*. According to the notice,

> 1. [Hale] was convicted of two counts of First Degree Trafficking in a Controlled Substance in case 13-CR-070, on or about November 13, 2013, in the Circuit Court for Carter County, Kentucky.
>
> 2. [Hale] was convicted of First Degree Trafficking in a Controlled Substance in case 10-CR-167, on or about May 20, 2011, in the Circuit Court for Rowan County, Kentucky.

*Id*. One effect of Hale's prior felony drug convictions was to increase his statutory maximum sentence from 20 years to 30 years. *See* 21 U.S.C. § 841(b)(1)(C).[4]

In the plea agreement that he signed on November 30, 2015, Hale admitted that the government could prove he was convicted of the prior drug felonies described in the § 851 notice. D.E. 78 ¶¶ 3(m) & 3(n). He acknowledged that "[b]ecause of the prior drug felony conviction," he faced a maximum statutory punishment of 30 years of imprisonment. *Id*. ¶ 4.

At his rearraignment, Hale orally acknowledged that he had a prior drug felony conviction. D.E. 96 at 35. The prosecutor, in summarizing the plea deal, noted the possible 30 year sentence due to a prior conviction. *Id*. at 34. The Court informed Hale he faced a "statutory

---

[4] In his affidavit, Hale's former attorney identifies a third prior drug felony from 1996. D.E. 101-1 at 2; *see also* PSR ¶ 33 (noting a state sentence of two years for felony trafficking in marijuana).

13

cap" of 30 years. *Id*. at 38. Hale clearly heard the Court on this point because he argued that "in 30 years, I'll be 82 years old, Your Honor."[5] *Id*.

Hale now argues that his counsel did not attempt "to argue to the United States to drop the Section 851." D.E. 90 at 2. He also alleges his counsel "never looked into the prior convictions that were allegedly listed in the § 851." *Id*. at 2, 7. He says his counsel "failed to explain the nature of Section 851 to Hale." *Id*.

Even if this allegation is true, Hale cannot prevail because any argument that the § 851 enhancement was invalid would have been futile. Because only one prior felony drug conviction is needed to trigger enhanced punishment under § 841(b)(1)(C), Hale must undermine both prior felony convictions in the notice.

In *Burgess*, the Supreme Court held that the term "felony drug offense" found in § 841(b) is "defined exclusively by § 802(44)." *Burgess v. United States*, 553 U.S. 124, 126 (2008). Section 802(44) "defines the compound term 'felony drug offense' to mean an offense involving specified drugs that is 'punishable by imprisonment for more than one year under any law of the United States or of a State or foreign country.'" *Id*.; *see also United States v. Grayson*, 731 F.3d 605, 606 (6th Cir. 2013); *United States v. Graham*, 622 F.3d 445, 456 (6th Cir. 2010). The specified drugs are "narcotic drugs, marihuana, anabolic steroids, or depressant or stimulant substances." 21 U.S.C. § 802(44).

Thus, Hale's claim fails if either of the listed convictions was "an offense involving specified drugs that is 'punishable by imprisonment for more than one year under any law of the United States or of a State or foreign country.'" *Burgess*, 553 U.S. at 126.

---

[5] This exchange renders meaningless Hale's unsupported claim in his § 2255 motion that "At no time did Butler inform Hale that he faced anywhere close to twenty years." D.E. 90 at 20.

14

Hale provides no argument that the offenses listed in the notice were not felony drug offenses under the statutory definitions. Hale's PSR notes that the 2011 conviction for first-degree trafficking in a controlled substance resulted in a sentence of "5 years prison, suspended." PSR ¶ 34. And the 2013 conviction for first-degree trafficking in a controlled substance resulted in a sentence of "3 years prison, suspended." *Id*. ¶ 35. Hale gives the Court no reason to believe that his attorney could have successfully bargained to have the government withdraw the § 851 notice or that it was somehow invalid. And, in light of the record, his statement that he was ignorant of the nature of the sentencing enhancement is not credible. Hale's *Strickland* claims related to the § 851 notice fail. Because any argument against the enhancement would have been futile, Hale proves neither deficient performance nor prejudice.

### F. Ineffectiveness Regarding the Career Offender Enhancement

Hale alleges that his counsel was ineffective for making "no attempt to argue that Hale's alleged prior drug offenses were not 'controlled substance offenses' for purposes of the career offender [Guideline]." D.E. 90 at 13. He states that "had Butler investigated these alleged prior Kentucky drug offenses he would have successfully argued that none of the drug offenses in Kentucky would have qualifie[d] for purposes of the career-offender enhancement." *Id*. at 14.

Hale cannot prove deficient performance or prejudice because the argument he proposes would have been futile.

Section 4B1.1(a) of the Guidelines defines "Career Offender" for sentencing purposes:

**(a)** A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

Section 4B1.2(b) defines "controlled substance offense:"

15

**(b)** The term "controlled substance offense" means an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

Hale's 2011 and 2013 convictions for first-degree trafficking were punishable by more than a year of incarceration. In fact, Hale received sentences of five years and three years. PSR ¶¶ 34-35. The convictions involved the distribution of a controlled substance. *See* Ky. Rev. Stat. § 218A.1412. Therefore, both convictions fit USSG § 4B1.2(b)'s definition of "controlled substance offense."

Additionally, Hale's federal conviction for conspiracy to distribute oxycodone (21 U.S.C. §§ 841 & 846) was a felony and a controlled substance offense. Hale therefore fits USSG § 4B1.1(a)'s definition of a career offender.

Hale offers no argument that his convictions do not fit these definitions. He cites the Supreme Court's decisions in *Descamps v. United States*, 133 S. Ct. 2276 (2013), and *Mathis v. United States*, 136 S. Ct. 2243 (2016). D.E. 90 at 13. But he does not explain how these decisions would have affected his career offender status. *Descamps* and *Mathis* dealt with the Armed Career Criminal Act's definition of "crime of violence." They have no applicability to the Guidelines' definition of controlled substance offenses under the career offender enhancement. Hale cites the case of *United States v. Hinkle*, 832 F.3d 569, 572 (5th Cir. 2016), which dealt with a Texas statute. D.E. 90 at 14. However, Kentucky's first-degree trafficking statute is not divisible in the same way as the Texas statute in *Hinkle*. A violation of the Kentucky first-degree trafficking statute is a controlled substance offense. *See United States v. Knox*, No. 2:11-CR-60-DLB-EBA, 2016 WL 7320883, at *3 (E.D. Ky. Dec. 15, 2016). Because

any argument against Hale's career offender status would have been futile, he cannot prove deficient performance or prejudice.

### G. Failure to Investigate

All that remains is Hale's general claim that his counsel failed to investigate. He alleges his retained counsel "did much of nothing in the investigation of the case." D.E. 90 at 2. Counsel states that he represented Hale during the related state court prosecution. D.E. 101-1 at 1. Counsel states that, during that period, he "questioned witnesses, interviewed police officers, had one preliminary hearing, obtained and reviewed discovery, conferenced the cases with the Commonwealth Attorney as well as meeting with Hale multiple times." *Id.*

Aside from the topics already discussed in this Recommended Disposition, Hale does not identify any facts that counsel should have uncovered through an adequate investigation that would have affected the outcome of the case. Without any guidance as to what counsel should have discovered, the Court has no basis for finding deficient performance or prejudice.

## V. Conclusion

Hale has not met his burden of establishing ineffective assistance of counsel. The undersigned therefore **RECOMMENDS** that his 28 U.S.C. § 2255 motion (D.E. 90) be **DENIED.**[6]

The undersigned further **RECOMMENDS** that no Certificate of Appealability should issue. Under 28 U.S.C. § 2253(c)(2), a certificate of appealability may issue "only if the

---

[6] Although Hale does not explicitly request an evidentiary hearing, the Court notes that none is warranted. An evidentiary hearing is required "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); s*ee also Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Id.* Here, the record "conclusively show[s]" Hale is not entitled to relief, so no hearing is warranted. *Arredondo*, 178 F.3d at 782.

applicant has made a substantial showing of the denial of a constitutional right." *See also* Rule 11 of the Rules Governing Section 2255 proceedings. This standard is met if the defendant can show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). The Court has considered the issuance of a Certificate of Appealability as to each claim presented by Hale. However, no reasonable jurist would find the assessments on the merits above to be wrong or debatable; thus, no Certificate of Appealability should issue.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Recommended Disposition, issued under subsection (B) of the statute. *See also* Rules Governing Section 2255 Proceedings, Rule 8(b). Within fourteen days after being served with a copy of this decision, any party may serve and file specific written objections to any or all findings or recommendations for determination, *de novo*, by the District Court. Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

This the 28th day of July, 2017.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge